# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs in Knoxville December 18, 2013

## STATE OF TENNESSEE v. CURTIS ALLEN WHITE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 13-CR-11    Robert Crigler, Judge**

---

**No. M2013-01422-CCA-R3-CD - Filed January 28, 2014**

---

The appellant, Curtis Allen White, pled guilty in the Marshall County Circuit Court to three counts of aggravated assault, one count of domestic assault, one count of misdemeanor vandalism, and one count of resisting arrest. Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentences. After a sentencing hearing, the appellant received an effective five-year sentence to be served in confinement. On appeal, the appellant contends that the trial court abused its discretion by denying his request for alternative sentencing. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, PJ., and ROGER A. PAGE, J., joined.

William J. Harold (on appeal and at trial) and Michael J. Collins (at trial), Lewisburg, Tennessee, for the appellant, Curtis Allen White.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Senior Counsel; Robert Carter, District Attorney General; and Weakley E. Barnard and Michael D. Randles, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In January 2013, the Marshall County Grand Jury indicted the appellant for three counts of aggravated assault with a deadly weapon, a Class C felony; one count of domestic

assault, a Class A misdemeanor; one count of vandalism causing damage of $500 or less, a Class A misdemeanor; and one count of resisting arrest, a Class B misdemeanor. In May 2013, the appellant entered an open plea to all of the charges with the length and manner of service of the sentences to be determined by the trial court after a sentencing hearing. At the guilty plea hearing, the State advised the trial court that the charges resulted from the following facts: On January 4, 2013, the appellant and his girlfriend, Shannon Ghea, got into an argument at her home. The appellant did not physically assault Ghea but threatened her with a hammer. Ghea was afraid and went into a bedroom. The appellant went to the bedroom door and "banged" on it with the hammer, damaging the door. When three police officers arrived at Ghea's home, they found the appellant near the front door. He was holding the hammer and "charged toward" the officers. The officers drew their weapons and ordered the appellant to drop the hammer. The appellant replied, "'F you. Come on and shoot me.'" The officers tackled the appellant, and he continued to resist them until they handcuffed him.

At the sentencing hearing, the State introduced the appellant's presentence report into evidence. In the report, the then twenty-nine-year-old appellant claimed that he was sorry for the offenses and that they occurred because he did not take his medication. Shannon Ghea gave a statement for the report, saying that she did not feel like a victim, that the appellant did not hit her, and that the incident would not have happened if the appellant had taken his medication. She thought the appellant should be released from jail.

The report shows that the appellant dropped out of high school after the tenth grade and did not obtain his GED. The appellant stated in the report that he began using alcohol when he was fourteen years old but stopped drinking alcohol in January 2013. The appellant also stated that he began using marijuana when he was thirteen years old, that he began using Xanax when he was fifteen years old, and that he consumed other pills. However, the appellant said he stopped consuming illegal and prescription drugs because using them was a "'bad thing to do.'" The appellant described his physical health as "poor" due to seizures, migraines, problems with balance, and a liver problem and described his mental health as "fair" due to his suffering from depression, anxiety attacks, racing thoughts, seizures, and short-term memory loss. The report shows that the appellant has a history of suicide attempts and that he was hospitalized several times for his mental issues. Medical records attached to the report show that the appellant received a traumatic brain injury in April 2011. At the time of the report, the appellant was unemployed and receiving social security disability.

According to the report, the appellant has three prior convictions for public intoxication, two prior convictions for driving under the influence, two prior convictions for driving on a revoked license, and prior convictions for simple assault, reckless endangerment, failing to stop after an accident, failing to render aid, violating the open container law, simple

possession, and underage drinking. The report also shows that the appellant has violated probation sentences several times.

Renee Howell, an investigating officer for the Department of Correction's Probation and Parole Department, testified about the appellant's presentence report. She said she thought the appellant's brain injury occurred when he was hit on the head with a baseball bat during an altercation.

Shannon Ghea testified for the appellant that she and the appellant were in a relationship at the time of this incident and that she met him through her mother. She said she still wanted to be in a relationship with him and that she wanted him to be released from confinement so they could be together. She said that the appellant was a good man and that their argument "escalated out of control." If the trial court allowed the appellant to be released from jail, he would live with her.

On cross-examination, Ghea testified that on the night of January 4, 2013, she and the appellant argued about money. She told him to leave her home, but he refused. Ghea acknowledged that she telephoned the police. She said the appellant picked up a hammer but never threatened to hit her with it. Instead, he used it to hit the bedroom door. She said that when the police arrived, the appellant was standing in the doorway of her home and was still holding the hammer. The police pulled out their guns, and she asked them not to shoot the appellant. She said the appellant told them, "Just go ahead and shoot me." The appellant turned, dropped the hammer, and ran into the hallway. Ghea said that the three officers "all got on top of him" and that the appellant's lip was "busted." She said that she did not think another incident like this would happen again. She said that shortly before she met the appellant, he was involved in an argument with someone, "got hit," and hit the pavement. She acknowledged that most of the appellant's prior offenses occurred before he received his brain injury.

Sherry Ghea, Shannon Ghea's mother, testified that she and the appellant's mother were good friends and that she had known the appellant since he was a small child. She said that she saw a change in the appellant's behavior after his brain injury, that he went from a quiet boy to "more angry," and that the injury "brought him out of his shell, so to speak." The appellant's father had abused him when he was a child, and the appellant also was affected by his twin brother's death, which occurred about ten years before the sentencing hearing. Sherry Ghea said the appellant suffered from depression and often failed to take his medication. Other than the incident in question, she had never seen him behave violently. On cross-examination, she testified that she was taking Lexapro, Xanax, pain medication, and blood pressure medication.

The trial court applied enhancement factor (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," due to the appellant's prior convictions and drug use. Tenn. Code Ann. § 40-35-114(1). The trial court also applied enhancement factor (8), that the appellant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community, specifically probation, and factor (19), that the victim of the aggravated assault was a law enforcement officer performing in his or her official duty and the appellant knew or should have known that the victim was such an officer. See Tenn. Code Ann. § 40-35-114(19).

In mitigation, the trial court applied factors (8), that "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense," and (13) for the appellant's "open plea." Tenn. Code Ann. § 40-35-113 (8), (13). The trial court stated that the appellant probably had "some pretty bad mental problems" but that "that doesn't make him any less dangerous."

The trial court sentenced the appellant as a Range I, standard offender to five years for the aggravated assault convictions; eleven months, twenty-nine days for the domestic assault and vandalism convictions; and six months for the resisting arrest conviction. The trial court ordered that the appellant serve the sentences concurrently. Regarding alternative sentencing, the trial court stated as follows:

> I'm going to deny alternative sentencing, because of the seriousness of the offense. For all, actually, for all reasons, he's had probation frequently and often. He has a long history of criminal conduct. And due to the seriousness of the offense and also due, I think he'd be a poor candidate for rehabilitation or I don't think he could successfully complete alternative sentencing.

The trial court said it would recommend that the appellant serve his effective five-year sentence in Deberry Special Needs due to his mental problems.

## II. Analysis

The appellant contends that the trial court erred by denying his request for alternative sentencing, "especially in light of [his] mental history." He also contends that he should have received alternative sentencing because his girlfriend said he could live with her if the trial court released him from confinement, because he suffered from depression, and because allowing him to serve his sentences on probation would allow him to obtain employment,

-4-

support himself, and pay off his debts. The State argues that the trial court did not abuse its discretion by denying the appellant's request for alternative sentencing. We agree with the State.

In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Even more recently, the court specifically held that the abuse of discretion standard, with a presumption of reasonableness, applies to a review of a denial of alternative sentencing. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentences meet this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The record demonstrates that the trial court denied alternative sentencing by finding that confinement was necessary to protect society by restraining the appellant who had a long history of criminal conduct, because confinement was necessary to avoid depreciating the seriousness of the offense, because measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the appellant, and because the appellant lacked potential for rehabilitation. We agree with the trial court that he shows poor potential for rehabilitation. Moreover, given the facts of this case, the appellant's criminal history, and his violation of prior alternative sentences, the trial court did not abuse its discretion by ordering that the appellant serve his effective five-year sentence in the Department of Correction.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE